FILED
 2015 Oct-02  PM 03:36
U.S. DISTRICT COURT
    N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **WILLIE MAE BROOKS,**           ) | |
| )| |
| Plaintiff,           ) | |
| )| |
| vs.           ) | Civil Action Number |
| )| **2:14-cv-01765-AKK** |
| **CAROLYN W. COLVIN,**           ) | |
| **ACTING COMMISSIONER OF**           ) | |
| **SOCIAL SECURITY,**           ) | |
| )| |
| Defendant.           ) | |
| )| |

## MEMORANDUM OPINION

Plaintiff Willie Mae Brooks brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision—which has become the decision of the Commissioner—is supported by substantial evidence and, therefore, affirms the decision denying benefits.

## I. Procedural History

Brooks protectively filed an application for Title XVI Supplemental Security Income on February 14, 2011, alleging disability beginning the same day

due to emphysema, degenerative disc disease, and high blood pressure. (R. 107, 111). After the SSA denied her applications on June 3, 2011, Brooks requested a hearing. (47–48, 51). At the time of the hearing on February 11, 2013, Brooks was 53 years old, had a high school diploma, and past relevant sedentary work as a receptionist. (R. 28, 41, 111). Brooks has not engaged in substantial gainful activity since April 20, 2009. (R. 39).

The ALJ denied Brooks claim on March 1, 2013, which became the final decision of the Commissioner when the Appeals Council refused to grant review on July 14, 2014. (R. 1–4, 7–23). Brooks then filed this action pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the

evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). A physical or mental

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1)  whether the claimant is currently unemployed;

(2)  whether the claimant has a severe impairment;

(3)  whether the impairment meets or equals one listed by the Secretary;

(4)  whether the claimant is unable to perform his or her past work; and

(5)  whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, she must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*. However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, <u>neither requires objective proof of the pain itself</u>. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard <u>a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself</u>. *See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale*, 831 F.2d at 1012. Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability. *Id*.

## IV. The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ initially determined that Brooks had not engaged in substantial gainful activity since her alleged onset date and therefore met Step One. (R. 12). Next, the ALJ acknowledged that Brooks' severe impairments of osteoarthritis with right hip involvement, status post right hip arthroplasty, lumbar radiculopathy, left shoulder rotator cuff tendinosis with impingement, degenerative disc disease of the cervical

and lumbar spine, and chronic obstructive pulmonary disease satisfied step two. *Id*. The ALJ also concluded that Brooks' pain disorder and major depressive disorder were nonsevere impairments. *Id*. The ALJ then proceeded to the next step and found that Brooks did not satisfy Step Three since she "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." (R. 14). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where she determined that Brooks:

> has the residual functional capacity ["RFC"] to perform sedentary work as defined in 20 CFR 416.967(a) except [Brooks] can occasionally balance, stoop, kneel, crouch, crawl, climb ramps and stairs; can never climb ladders, ropes or scaffolds; can occasionally reach overhead bilaterally; must be allowed to alternate between sitting and standing every 30 minutes to 1 hour while remaining on task; must avoid exposure to hazardous machinery and unprotected heights; must avoid concentrated exposure to extreme cold, heat, fumes, odors, dusts and gases; will be off task 10% of the day and miss work 1 day per month; and is able to perform goal-oriented work.

(R. 14). In light of Brooks' RFC, the ALJ determined that Brooks "is capable of performing past relevant work as a receptionist" because the "work does not require the performance of work-related activities precluded by [Brooks' RFC]." (R. 19). Therefore, because the ALJ answered Step Four in the negative, the ALJ determined that Brooks is not disabled. (R. 28); *see also McDaniel*, 800 F.2d at

1030.

## V. Analysis

Brooks' primary contention is that the ALJ improperly discredited Brooks' testimony of disabling pain in her back, hips, and shoulders. Doc. 8 at 3–9. The ALJ found that Brooks' "statements concerning the intensity, persistence and limiting effects of [her] symptoms were not entirely credible," (R. 15) because Brooks' "treatment records fail to reveal the type of significant clinical and laboratory abnormalities one would expect if [Brooks] were in fact disabled," *id*., and because Brooks' "allegations as to the debilitating nature of her impairments are undermined by her inconsistent statements regarding her work history," (R. 17). Brooks contends that this finding was not supported by substantial evidence. Doc. 8 at 4.

      A. Substantial Evidence Supports the ALH's Reasons for Discrediting Brooks' Pain Testimony

At the outset, the court reiterates its earlier explanation of the standard of review in the present matter. The court must affirm the ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). This is not a stringent standard; substantial evidence falls somewhere between a scintilla and a preponderance of evidence, and, if supported by substantial evidence, the court

must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *Martin*, 894 F.2d at 1529.

Consequently, in light of this deferential standard, the court finds that substantial evidence in Brooks' medical records supports the ALJ's credibility determination. First, as to Brooks' back condition, although in January 2011 chiropractor Kerron Vickers reviewed Brooks' spinal x-rays and opined that she suffered from disc degeneration, degenerative spondylolisthesis and right scoliosis in her lumbar and cervical spine. (R. 230). However, Brooks underwent multiple physical back and neck exams during the relevant time period, which yielded normal results, (R. 226, 292, 313), and, as such, support the ALJ's credibility determination.

Second, as to Brooks' hip condition, Brooks underwent a total right hip replacement in June 2012, prior to which she reported sharp, unrelenting pain. (R. 302). However, prior to the operation, during a May 2011 consultative exam, Brooks was able to get on and off of the examination table, and although she alleged that she needed a cane, she was not using any assistive devices. (R. 239–40). During an October 2011 exam, Brooks' orthopedist, Dr. Robert Agee, who previously opined that she had right hip degenerative joint disease, (R. 236), noted that Brooks' right hip was responding well with the use of NSAIDS and

physical therapy, (R. 273), however by May 2012, Brooks was complaining to Dr. Agee of continued severe pain and requested a hip replacement, (R. 270). The hip replacement appears to have been a success. In August 2012, she reported to Dr. Agee that she was "doing well [and] making good progress" following the surgery, and Dr. Agee described her wounds as well-healed and her physical movements as intact. During a January 2013 examination, Dr. Glenn Harnett noted that her gait and stance were normal. (R. 313). This evidence also supports the ALJ's credibility determination.

Third, as to Brooks' shoulder pain, in May 2011, Brooks sought treatment from Dr. Agee for left shoulder pain. (R. 235–36). Dr. Agee observed mild strength loss and that Brooks had trouble raising her left arm over her head. Brooks' shoulder x-rays were normal, and Dr. Agee diagnosed her with left shoulder tendinosis with impingement and treated her with a steroid injection. *Id*. In May 2011, Brooks also reported left shoulder pain to consultive physician Dr. William Meador. (R. 238). In October 2011, Dr. Agee noted that Brooks was "doing good" following the steroid injection, (R. 273). In May 2012, Brooks again sought treatment from Dr. Agee for left shoulder pain, and while Dr. Agee noted that Brooks suffered from a possible left shoulder rotator cuff tear and that he would order an MRI of her left shoulder, (R. 270), there are no subsequent records

regarding tests or treatment for Brooks' shoulder condition. Additionally, Dr. Agee's subsequent records from July and August 2012 make no mention of Brooks' shoulder condition. (R. 268, 269). In other words, Dr. Agee's records belie Brooks' contentions of disabling pain, and support the ALJ's credibility determination.

Fourth, the ALJ's conclusion is supported by the opinion of non-examining state agency consultant Dr. Robert Heilpern, (R. 256–63), to which the ALJ gave "some weight," (R. 18), that Brooks' right hip osteoarthritis, spondylolisthesis, COPD, and bilateral shoulder pain would not significantly limit her ability to perform work, (R. 256–63). Although the opinion of a non-examining consultant cannot, taken alone, constitute substantial evidence, *Swindle v. Sullivan*, 914 F.2d 222, 226 n. 3 (11th Cir. 1990), such a consultant's opinion can provide support for an ALJ's decision when the opinion does not contradict treatment records or exam results, *Brown v. Comm'r of Soc. Sec.*, 442 F. App'x 507, 512 (11th Cir. 2011) (citing *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991)).

In the final analysis, while there certainly is evidence supporting Brooks' position, there is also evidence supporting the ALJ's conclusion that the Brooks' medical records are inconsistent with her allegations of disabling pain. Consequently, substantial evidence supports the ALJ's conclusion. Moreover, the

ALJ provided a second reason for his credibility determination, which Brooks completely fails to address, namely Brooks' "inconsistent statements regarding her work history." (R. 17). As the ALJ noted:

> [Brooks] testified that she worked as a receptionist for a year but stopped working because she could not perform her job. [citing (R. 39).] Yet she told the consultative examiner that she worked for 2 years and that she stopped working because the business closed. [(citing R. 232).] Additionally, in her application for disability, [Brooks] reported that she had never worked. [(citing R. 111)]. Yet she later admitted employment, with a work history both before and after she had children. [citing (R. 124).]

(R. 17). In sum, because medical evidence supported the ALJ's findings and because Brooks proved herself less than credible in other areas of her testimony, substantial evidence supports the ALJ's decision to discredit Brooks' pain testimony.

      B. The ALJ Did Not Impermissibly "Cherry Pick" Evidence

      Brooks' contention that in reaching her decision the ALJ impermissibly relied on cherry picked evidence, doc. 8 at 5-6, is unavailing. In particular, Brooks seems to take issue with the ALJ's treatment of Dr. Moran's examination, noting that while the ALJ noted Dr. Moran's observation that Brooks could sit relatively comfortably and get on and off of the examination table, she failed to note his observation that Brooks did not rest her back against the back rest, primarily used her lower left leg to get on and off of the examination table, was unable to take her

shoes on and off, and reported severe pain. *Id*; *see also* (R. 15, 239–41). However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Additionally, Dr. Moran's observations were based, in part, on Brooks' self-reported claim, which, as previously discussed, the ALJ found not to be entirely credible.

### C. The ALJ Fully Evaluated the Medical Record

As to the rest of the record, contrary to Brooks contentions, doc. 8 at 7–8, the ALJ considered Brooks positive straight leg raises, hip and spinal x-rays, left shoulder impingement, and total hip replacement, *see* (R. 15–16). Moreover, while Brooks alleges that the ALJ erred by "fail[ing] to account of the longitudinal medical record," the medical records she cites date from 2007, 2008, and 2010. *See* doc. 8 at 6–7 (citing R. 168, 174, and 194). The relevant period here, however, dates from February 2011, when Brooks filed her disability application. *See* 20 C.F.R. § 416.335 ("When you file an application in the month that you meet all the other requirements for eligibility, the earliest month for which we can pay you benefits is the month following the month you filed the application."). Critically, Brooks fails to account for why the numerous limitations the ALJ placed on her

R.F.C. are insufficient to accommodate for her limitations.[2] At the end of the day, the "claimant has the burden of proving disability." *Vaughn v. Heckler*, 727 F.2d 1040, 1041–42 (11th Cir. 1984).

Lastly, Brooks contends that the "ALJ did not properly consider the combined effects of [Brooks'] multiple impairments." Doc. 8 at 8. Brooks is correct that

> a claim for social security benefits based on disability may lie even though none of the impairments, considered individually, is disabling. In such instances, it is the duty of the administrative law judge to make specific and

---

[2] The ALJ found:

[Brooks] is limited to sedentary work. This is consistent with the consultative examiner's report indicating that [Brooks] was limited in the use of her right lower extremity and indicating that she had a reduced range of motion as well as crepitus and popping in her hip. This is consistent with imaging results revealing degenerative disc disease of the lumbar and cervical spine, right hip osteoarthritis and left shoulder impingement. Based on a combination of [Brooks'] hip and back impairments, the [ALJ found] that [Brooks] can occasionally balance, stoop, kneel, crouch, crawl, climb ramps and stairs; can never climb ladders, ropes or scaffolds. Based on the objective medical evidence indicating that [Brooks] has left shoulder impingement and the consultative examiner's finding of bilateral shoulder pain, the [ALJ found] that [Brooks] can occasionally reach overhead bilaterally. To account for [Brooks'] allegations that she is unable to stand or sit for long periods, the [ALJ found] that [Brooks] must be allowed to alternate between sitting and standing every 30 minutes to 1 hour while remaining on task. Due to a combination of [Brooks'] musculoskeletal impairments and especially considering her antalgic gait and right hip problems, the [ALJ found] that [Brooks] must avoid exposure to hazardous machinery and unprotected heights. To account for [Brooks'] chronic obstructive pulmonary disease, the [ALJ found] that [Brooks] must avoid concentrated exposure to extreme cold, heat, fumes, odors, dusts and gases. [Brooks] testified that she had problems at her previous job because she needed to get up and walk back and forth due to her physical pain. To account for this, the [ALJ found] that [Brooks] will be off task 10% of the day and miss one day per month.

(R. 17–18).

well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled."

*Bowen v. Heckler*, 748. F.2d. 629, 635 (11th Cir. 1984) (citations omitted). However, Brooks ignores the fact that this circuit has "repeatedly held that an ALJ's finding regarding a claimant's 'impairment or combination of impairments' establishe[s] that the ALJ had indeed considered the impact of the claimant's combined impairments." *Reliford v. Barnhart*, 157 F. App'x 194, 196 (11th Cir. 2005) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1224–25 (11th Cir. 2002)). Here, the ALJ clearly articulated that she considered the combined effects of Brooks' impairments, both when determining whether Brooks' impairments met or equaled a listed impairment and when determining Brooks' RFC. *See* (R. 14) ("[Brooks] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments"); (R. 17) ("Based on a combination of [Brooks'] severe physical impairments, the undersigned finds she is limited to sedentary work."). Consequently, Brooks' contention that the ALJ failed to properly consider the combined effects of Brooks' impairments lacks merit.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination

that Brooks is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is affirmed. A separate order in accordance with the memorandum of decision will be entered.

    Done the 2nd day of October, 2015.

_____
  **ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE